LAW OFFICES OF MYLES S. BREINER

MYLES S. BREINER                    4364
1003 Bishop Street, Suite 2150
Honolulu, Hawaii 96813
Tel. No. (808) 526-3426
*Myles@Breinerlaw.net*


REVERE & ASSOCIATES
A Limited Liability Law Company

TERRANCE M. REVERE                  5857
CLARISSE M. KOBASHIGAWA             9314
Pali Palms Plaza
970 N. Kalaheo Ave., Suite. A301
Kailua, Hawaii 96734
Tel. No. (808) 791-9550
Facsimile No. (808) 791-9551
*terry@revereandassociates.com*
*clarisse@revereandassociates.com*

Attorneys for Plaintiff
CHRISTINA C. RILEY

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAII

## (Caption Continued On Next Page)

| CHRISTINA C. RILEY, | Civil No. 16-1-00360 DKW-RLP |
|---|---|
| Plaintiff, | |
| | PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS STATE OF HAWAII, DEPARTMENT OF PUBLIC SAFETY, ET AL. MOTION FOR JUDGMENT ON THE PLEADINGS, FILED ON MARCH 15, 2019 [ECF NO. 73]; CERTIFICATE OF SERVICE |
| vs. | |
| **STATE OF HAWAII**, **DEPARTMENT OF PUBLIC SAFETY**, **NOLAN ESPINADA**, in his Capacity as the Director of Public Safety; **JAMES HIRANO**, individually and in his capacity as Warden of the Maui Community Correctional Center; **JAMES SUGPIYEMAL**, individually and in his Capacity as an Adult Corrections Officer. | |
| | HEARING : April 5, 2019 TIME : 10:30 AM  JUDGE : Hon. Derrick K. Watson |
| Defendants. | |
| | Trial Date: April 15, 2019 |

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS STATE
OF HAWAII, DEPARTMENT OF PUBLIC SAFETY, ET AL.
MOTION TO FOR JUDGMENT ON THE PLEADINGS,
FILED ON MARCH 15, 2019 [ECF NO. 73]

Plaintiff CHRISTINA C. RILEY ("Plaintiff"), by and through her
undersigned attorneys, hereby submits her Memorandum In Opposition to
Defendants State of Hawaii, Dept. of Public Safety ("DPS"), Nolan Espinda, in his
official capacity ("Espinda") and James Hirano, in his official capacity ("Hirano")
(collectively the " State Defendants") Motion For Judgment on the Pleadings, Filed
on March 15, 2019 ("MJOP")/[ECF 73]. The State Defendants seek an order from
this Court "dismissing all claims asserted against them in Plaintiff's Complaint
and/or for entry of judgment in their favor as to all of Plaintiff's claims," under the
defense of sovereign immunity. MJOP at 2.

## I.    BACKGROUND

Plaintiff Christina Riley was raped and sexually assaulted by Defendant
James Sugpiyemal, an Adult Correctional Officer ("ACO") at the Maui
Community Correctional Center ("MCCC") and brings claims pursuant to 42
U.S.C § 1983 for her rape and sexual assault, regarding Defendant State of
Hawaii's long-standing policy of using male guards to supervise female prisoners,
its failure to train, properly hire or supervise those guards, failure to provide
procedures and premises that insure the safety of its female prisoners, that
Defendant State of Hawaii had knowledge of.

Given her work furlough status, it is undisputed that Plaintiff was incarcerated the time of the sexual assaults and rape. Thus, she was in the custody and care of MCCC at the time of these events. It is also undisputed that Defendant Siugpiyemal was a guard or Adult Correctional Officer ("ACO") at MCCC during the time of these events.

## II. **APPLICABLE STANDARD**

Defendants already fail to state the full rule by which they are bringing the subject motion. Leaving out the most critical part, Fed. Rules of Civ. Pro. ("FRCP") 12(c) clearly states, "After pleadings are closed – **but early enough not to delay trial** – a party may move for judgment on the pleadings." Defendants are bringing the subject dispositive motion, well past the deadline for filing dispositive motions, and most importantly on the eve of trial, set to begin on April 15, approximately two weeks away. Defendants did not seek leave from this Court to bring a dispositive motion that is well past the deadline.

When deciding a motion for judgment on the pleadings, "the <u>allegations of the non-moving party must be accepted as true, while the allegations of the moving party which have been denied are assumed to be false</u>." (emphasis added) *See* <u>Doleman v. Meiji Mutual Life Ins. Co.</u>, 727 F.2d 1480, 1482 (9th Cir. 1984) *see also* <u>Austad v. United States</u>, 386 F.2d 147, 149 (9th Cir. 1967). Furthermore, "Judgment on the pleadings is proper when the moving party clearly establishes on

2

the face of the pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law." <u>Doleman</u>, 727 F.2d at 1482. *See also* <u>Hal Roach Studios, Inc. v. Richard Feiner & Co.</u>, 896 F.2d 1542, 1550 (9th Cir. 1989)

### A. <u>Preference For Leave to Amend</u>

Similar to a motion to dismiss, leave to amend is also proper when deciding a motion for judgment on the pleadings. *See* <u>Wendell v. Johnson & Johnson</u>, No. C 09-04124 CW, 2010 U.S. Dist. LEXIS 68874, at *2-3, 2010 WL 2465456 (N.D. Cal. June 14, 2010).

In addition, "a failure to comply with many of the special pleading provisions in Rule 9 need not be remedied by a dismissal of the action or a striking of the pleading, but can be corrected through a motion for a more definite statement or the use of the discovery procedures." 5 CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1291, at 564 (2d ed. 1990). Accordingly, Plaintiff respectfully requests permission for leave to amend, should this Court be inclined to find for the State on any of its requests for judgment on the pleadings.

### III. <u>ARGUMENT</u>

Defendants motion should be denied for the simple fact that they are already in violation of FRCP 12(c). FRCP 12(c) very plainly states that such a motion

should be brought "early enough not to delay trial." Here, the State Defendants are way past the dispositive motions cut off and standing upon the eve of trial. If Defendants wished to file the subject motion, they should have done so previously, prior to the June 26, 2018 deadline and more than <u>one month</u> prior to trial. Notably, by the time this Court hears this motion, it will be <u>one week</u> prior to trial commencement on April 15.

### A. Given the nature and timing of Defendant's Motion, Plaintiff should be granted Leave to Amend her Complaint and to Continue the Trial Date

Simply put, if Defendants are allowed to have their dispositive motion heard, which is being brought so very late in the day, then accordingly Plaintiff should be allowed leave to amend their complaint and to continue the current trial date.

A motion for judgment on the pleadings is very clearly a dispositive motion. The cut-off date for filing dispositive motions came and went on June 26, 2018, per the Fourth Amended Rule 16 Scheduling Order [ECF 66]. It is plain as day that the only reason that the subject motion is being brought is because Defendants have nothing else to do.

### B. Plaintiff Should be Granted Leave to Amend their Complaint.

With respect to the State Defendants, Plaintiff acknowledges the following:

> Defendants named in their official capacities are not persons subject to suit under § 1983. *See Will v. Michigan Dep't of State Police*, 491 U.**S**. 58, 70, 109 **S**. Ct. 2304, 105 L. Ed. 2d 45 (1989); *Flint v. Dennison*, 488 F.3d 816, 824-25 (9th Cir. 2007).

4

Further, "[t]he Eleventh Amendment bars suits against a state or its agencies, regardless of the relief sought, unless the state unequivocally consents to a waiver of its immunity." *Wilbur v. Locke*, 423 F.3d 1101, 1111 (9th Cir. 2005) (quoting *Yakama Indian Nation v. Wash. Dep't of Revenue*, 176 F.3d 1241, 1245 (9th Cir. 1999)), *abrogated on other grounds by Levin v. Commerce Energy, Inc*., 560 U.**S**. 413, 130 **S**. Ct. 2323, 176 L. Ed. 2d 1131 (2010). The only exception is "for prospective declaratory and injunctive relief against state officers, sued in their official capacities, to enjoin an alleged ongoing violation of federal law." *Id*. (quoting *Agua Caliente Band of Cahuilla Indians v. Hardin*, 223 F.3d 1041, 1045 (9th Cir. 2000)); *see Ex parte Young*, 209 U.**S**. 123, 28 **S**. Ct. 441, 52 L. Ed. 714 (1908).

*See* Hatcher v. Harrington, No. 14-00554 JMS/KSC, 2015 U.S. Dist. LEXIS 13799, at *6-7 (D. Haw. Feb. 5, 2015).  However, with respect to waiver, Plaintiff contends that acceptance of federal funding under the PREA statute constitutes a waiver of the State's Eleventh Amendment Immunity.

As Defendants state in their motion, "A state may waive its immunity only if it does so unequivocally, or Congress can exercise its power under the Fourteenth Amendment to override that immunity, the state, its agencies, and its officials acting in their official capacity are immune from suit under the Eleventh Amendment.  Will v. Michigan Dep't State Police, 491 U.S. 58, 66 (1989)." MJOP at 5.

The Prison Rape Elimination Act (PREA) was a call to action, not just by the federal government but for **all state-run facilities**. Keeping female prisoners safe from sexual abuse and harassment from correctional staff drove the need for PREA. Specifically, Congress found that the prevalence of sexual abuse "involves

actual and potential violations of the United States Constitution," and thus concluded that national standards were necessary to prevent, detect, and respond to such abuse. See 42 U.S.C. §15601(13).

Under PREA, it is clear that state correctional facilities such as MCCC, operated by Defendants are subject to both the Constitution and the PREA standards, specifically to protect prisoners from harm, including sexual abuse. Defendants should be concerned given the fact that, a finding of noncompliance with the PREA standards puts a state at risk for loss of certain federal funds.

As alleged in Plaintiff's Complaint, Plaintiff was placed at an unconstitutional risk of harm due to Defendants' failure to keep her safe from MCCC employees.  Thus, with a mix of federal and state claims, this court retains subject matter jurisdiction, and the State Defendants should not be dismissed from this lawsuit.  <u>In accepting federal funds under PREA the State has effectively waived its immunity.</u>

### 1. Inherent in Plaintiff's Complaint is A Claim for a 1st Amendment Violation, which withstands Defendant's Argument for Judgment on the Pleadings

As Defendants surmise, in reading paragraphs 48 and 51, Plaintiff is alleging a First Amendment violation claim – as it relates to retaliation. Under such a First Amendment Claim:

> In the prison context, allegations of retaliation against a prisoner's First Amendment rights to speech or to petition the government may support a section 1983 claim. *Rizzo*

> *v. Dawson,* 778 F.2d 527, 532 (9th Cir. 1985); *see also Valandingham v. Bojorquez,* 866 F.2d 1135 (9th Cir. 1989); *Pratt v. Rowland,* 65 F.3d 802, 807 (9th Cir. 1995). "[A] viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson,* 408 F.3d 559, 567-68 (9th Cir. 2005).

Saenz v. Spearman, No. 1:09-cv-00557-YNP PC, 2009 U.S. Dist. LEXIS 97681,

at *14-15 (E.D. Cal. Sep. 30, 2009). Here Plaintiff has made sufficient allegations

in her complaint to assert such a claim. *See* State's Exhibit A, Paragraphs 31

through 37 & 51.

2. **Inherent in Plaintiff's Original Complaint is A Claim for an 8th Amendment Violation, which withstands Defendant's Argument for Judgment on the Pleadings**

Incumbent in Plaintiff's USC §1983 claim is a violation of Plaintiff's 8th

Amendment Right – the right to be free of cruel and unusual punishment:

> The Eighth Amendment prohibits the imposition of cruel and unusual punishments and "embodies 'broad and idealistic concepts of dignity, civilized standards, humanity and decency.'" *Estelle v. Gamble,* 429 U.S. 97, 102, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976) (quoting *Jackson v. Bishop,* 404 F.2d 571, 579 (8th Cir. 1968)). A prison official violates the Eighth Amendment only when two requirements are met: (1) the objective requirement that the deprivation is "sufficiently serious", *Farmer v. Brennan,* 511 U.S. 825, 834, 114 S. Ct. 1970, 128 L. Ed. 2d 811

7

(1994)(quoting *Wilson v. Seiter,* 501 U.S. 294, 298, 111 S. Ct. 2321, 115 L. Ed. 2d 271 (1991), and (2) the subjective requirement that the prison official has a "sufficiently culpable state of mind", *Id.* (quoting *Wilson,* 501 U.S. at 298). The objective requirement that the deprivation be "sufficiently serious" is met where the prison official's act or omission results in the denial of "the minimal civilized measure of life's necessities". *Id.* (quoting *Rhodes v. Chapman,* 452 U.S. 337, 347, 101 S. Ct. 2392, 69 L. Ed. 2d 59 (1981)). The subjective requirement that the prison official has a "sufficiently culpable state of mind" is met where the prison official acts with "deliberate indifference" to inmate health or safety. *Id.* (quoting *Wilson,* 501 U.S. at 302-303). A prison official acts with deliberate indifference when he/she "knows of and disregards an excessive risk to inmate health or safety". *Id.* at 837. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.*

<u>See</u> Saenz v. Spearman, No. 1:09-cv-00557-YNP PC, 2009 U.S. Dist. LEXIS 97681, at *12-13 (E.D. Cal. Sep. 30, 2009). A prison official's "deliberate indifference" to a substantial risk of serious harm to an inmate violates the Eighth Amendment. *See* <u>Farmer v. Brennan</u>, 511 US 825, 828 (1994).

Furthermore, prison officials like Espinda and Hirano cannot hide behind qualified immunity if <u>deliberate indifference</u> is shown. "Prison officials, particularly those in administrative positions, my be held 'liable for deliberate indifference when they knowingly fail to respond to an inmate's requests for help." <u>Manago v. Williams</u> at 80.

8

> "A supervisor may be liable for an *Eighth Amendment* violation if he or she was made aware of the problem and failed to act or if he or she promulgated or enforced a policy under which unconstitutional practices occurred." *Valley v. Director of Prisons, 2008 U.S. Dist. LEXIS 11136, 2008 WL 436954, \*5 (E.D. Cal. 2008)*, citing *Jett, 439 F.3d at 1098*; and *Black v. Coughlin, 76 F.3d 72, 74 (2d Cir. 1996)*.

A correctional officer, particularly one with <u>supervisory authority</u>, who is informed of an alleged constitutional violation (e.g. pursuant to reviewing an inmate's appeal) may be responsible for remedying such violation. <u>Manago</u> at 80-81, citing <u>Jett</u> at 1098.

Here, Plaintiff's Complaint specifically alleges that Plaintiff reported the incident, anonymously at first, but this clearly should have triggered an immediate investigation into Defendants Siugpiyemal's conduct. *See* State's Exhibit A at 3. Per the allegations of the Complaint that this Court must accept as true:

> Christina contacted her attorney's office, and they reported the incident to the State Department of Public Safety. Instead of properly investigating the allegations of rape, the State of Hawaii informed Defendant Siugpiyemal of Christina's claims. And Defendant Siugpiyemal made good on his threat to have her furlough revoked.

Plaintiff's Complaint goes on to allege the following:

> A few days after reports of the rape, Defendant Siugpiyemal had another ACO accuse Christina of a positive urinalysis, fifteen minutes after she just toOk a urinalysis which was negative. Christina's furlough was revoked, and she was taken back into custody. No one

> would listen to Christina's protest that she was not doing drugs, and the urine sample was not preserved in accordance with generally accepted substance abuse monitoring practices.
>
> Defendant State of Hawaii and its employees were entrusted with the knowledge that the matter was being presented to the Grand Jury for indictment and somehow Defendant Siugpiyemal was warned. He is believed to have fled the Islands, and is still a fugitive.

*See* State's Exhibit A at pg. 4. *See also* paragraphs 31 through 37 & 51.

A prison official is entitled to qualified immunity unless the facts, when viewed in the light most favorable to the plaintiff, would permit a reasonable juror to find that: (1) the defendant violated a constitutional right; and (2) the right was clearly established. *See* Bishop, 636 F.3d at 765. **The constitutional right to be free from deliberate indifference to assault and sexual abuse has been clearly established.** *Id*. *See also* Brokaw v. Mercer County, 235 F.3d 1000,1022 (7th Cir. 2000)(holding that certain acts are so clearly a violation of a constitutional right that binding precedent is not necessary to establish the right).

In the instant case Hirano, as the supervising authority of MCCC, should have launched an investigation into Plaintiff's allegations as soon as he was informed. *See* State's Exhibit A, Paragraphs 31 through 37 & 51.

Furthermore, Hirano as a MCCC policy maker, was in a position to design polices that would have prevented Riley's assault. Yet, despite this opportunity, Hirano failed to institute polices that would have been effective. The right to be

free from deliberate indifference to sexual abuse has been clearly established as

Constitutional right; Hirano violated that right through his actions. Therefore,

Hirano is not entitled qualified immunity from Riley's 42 U.S.C.§ 1983 claim.

    i.    *Defendant Hirano's Personal Liability Under 42 U.S.C. Section 1983 – Supervisor Liability*

Under Supervisor Liability, Defendant Hirano will be held liable where: (1)

<u>he was personally involved</u> in the constitutional deprivation, or (2) there is a

<u>sufficient causal connection</u> between the supervisor's wrongful conduct and the

constitutional violation. *See* <u>Starr v. Baca</u>, 652 F.3d 1202, 1207 (Cir. 2012).

Acquiescence or culpable indifference may suffice to show that a supervisor

"personally played a role in the alleged constitutional violations." <u>Starr</u> 652 F. 3d at

1208.

The law clearly allows actions against supervisors under section 1983 as

long as a sufficient causal connection is present and the plaintiff was deprived

under color of law of a federally secured right. <u>Starr</u>, 652 F. 3d at 1207. The

requisite causal connection can be established by setting in motion a series of acts

by others, or by knowingly refusing to terminate a series of acts by others, which

the supervisor knew or reasonably should have known would cause others to inflict

a constitutional injury. <u>Id</u>. at 1207; <u>Wood v. Beauclair</u>, 692 F. 3d 1041, 1051(9th

Cir. 2012). Again, Plaintiff's Complaint makes such allegations that survive a

motion for judgment on the pleadings. *See* State's Exhibit A, Paragraphs 31 through 37 & 51.

In the instant matter Hirano failed to follow proper protocol which requires immediate investigation of PREA violations. Hirano also failed to establish or enforce polices that would have adequately protected Riley from Siugpiyemal. Hirano therefore demonstrated culpable indifference to the risks to inmates such as Riley. These failures directly resulted in Riley's sexual assault. Hirano is therefore personally liable for supervisor liability under 42 U.S.C. § 1983.

> ii.   *Plaintiff's State Tort Claims - Defendants Espinda and Hirano's Liability Under Respondeat Superior*

The Department of Public Safety is liable under respondeat superior for the torts of its employees. *See* <u>Tokuhama v. City and County of Honolulu</u>, 751 F. Supp. 1385, 1394 (D. Haw.1989); <u>Orso v. City and County of Honolulu</u>, 56 Haw. 241, 248, 534 P. 2d 489, 494 (Haw. 1975); <u>Lane v. Yamamoto</u>, 2 Haw. App. 176, 178, 628 P. 2d 634, 636 (Haw. Ct. App. 1981). To recover under a respondeat superior theory, a plaintiff must establish: (1) a negligent act of the employee, in other words, a breach of a duty that is the legal cause of plaintiff's injury; and (2) that the negligent act was within the employee's scope of employment. *See* Doe Parents No. 1 v. State, Dept. of Educ., 100 Haw. 34, 67, 58 P. 3d 545, 578 (Haw. 2002).

The Restatement (Second) of Agency § 228 provides:

(1) Conduct of a servant is within the scope of
employment if, but only if:
(a) it is of the kind he is employed to perform;
(b) it occurs substantially within the authorized time and
space limits;
and
(c) it is actuated, at least in part, by a purpose to serve the
master.…
(2) Conduct of a servant is not within the scope of
employment if it is different in kind from that authorized,
far beyond the authorized time or space limits, or too
little actuated by a purpose to serve the master.

Restat. 2d of Agency, § 228 (2nd 1958) (cited in <u>Wong-Leong v. Hawaiian</u>

<u>Independent Refinery,</u> Inc., 879 P. 2d 538 - Haw: Supreme Court 1994).

As explained, infra, the DPS is liable for the torts of its employees under the

doctrine of respondeat superior. In particular, DPS is liable for the sexual assaults

committed by its prison guards under a respondeat superior theory. *See* <u>Spurlock v.</u>

<u>Townes</u>, 368 P. 3d 1213, 1217 (NM 2016) (holding government liable for off- duty

prison guard's sexual assault of female inmates); <u>Cox v. Evansville Police Dept.</u>,

107 NE 3d 453, 461 (Ind. 2018).

    a.  Not Even Qualified Privilege Can Abscond Defendants Espinda or
        Hirano

Hawaii courts have established that non-judicial governmental officials,

when acting in the performance of their public duty enjoy the protection of what

has been termed a qualified or conditional privilege. *See* <u>Towse v. State</u>, 64 Haw.

624, 630, 647 P. 2d 696, 702 (Haw. 1982). To prevail on a tort claim against a non-

judicial government official, the injured party must demonstrate by clear and convincing proof that the official was stirred by malice and not by an otherwise proper purpose. Towse, 64 Haw. at 631-32, 647 P.2d 696 at 702; Black v. City & Cnty. of Honolulu, 112 F. Supp. 2d 1041, 1048-49 (D. Haw. 2000); Runnels v. Okamoto, 56 Haw 1, 3, 525 P.2d 1125, 1128 (Haw. 1974).

The phrase "malicious or improper purpose" should be defined in its ordinary and usual sense. Awakuni v. Awana, 165 P. 3d 1027, 1042 (Haw 2007). Black's Law Dictionary defines "malicious" as "substantially certain to cause injury" and "without just cause or excuse." Id. Malice" is defined as "the intent, without justification or excuse, to commit a wrongful act," "reckless disregard of the law or of a person's legal rights," and "ill will; wickedness of heart." Id.

As laid out in Plaintiff's Complaint, Hirano and Espinda are each personally liable for the state torts that were committed while in the course of employment with the State with malice. And Defendant DPS will be held liable under respondeat superior.

## IV.   **CONCLUSION**

For the reasons stated above and in good faith, Plaintiffs respectfully request that this Court deny Defendants Motion for Judgment on the Pleadings. Or in the alternative, that Plaintiffs be given leave to amend their Complaint to clarify and cure any deficiencies and to continue the current trial date.

14

DATED:  Honolulu, Hawai`i, March 27, 2019                                        .

/s/ Clarisse M. Kobashigawa
MYLES S. BREINER
TERRANCE M. REVERE
CLARISSE M. KOBASHIGAWA
Attorneys for Plaintiff